IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GLENN A. HERMRECK and REBECCA HERMRECK, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10-2368-JWL |
| CITY OF LEAWOOD, KANSAS and JULIAN MORRISSEY HORN DEVELOPMENT COMPANY LC, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs, who own a home in Leawood, Kansas, brought this action in state court against defendant Julian Morrissey Horn Development Company LC ("Horn Development"), a developer of nearby property, and defendant City of Leawood ("the City"). Plaintiffs allege that conduct by defendants relating to the flow of water caused damage to plaintiffs' property, and they assert state-law claims for damage to property, nuisance, and inverse condemnation; takings claims under the federal and state constitutions; and a claim for violation of the federal Clean Water Act ("CWA") and other regulations and statutes. Defendants removed the case to federal court based on the presence of federal claims.

The matter is presently before the Court on defendants' motions to dismiss plaintiffs' petition (Doc. ## 3, 5). As more fully set forth below, both motions are

**granted in part and denied in part**. The Court concludes that, because of plaintiffs' bankruptcy filing, plaintiffs' claims belong to the bankruptcy trustee, and plaintiffs are not the real parties in interest; however, plaintiffs are granted leave until **October 18, 2010**, to substitute or join the bankruptcy trustee as plaintiff. The Court dismisses Count IV of plaintiffs' petition, asserted against Horn Development, because plaintiffs failed to satisfy the CWA's notice requirement before filing suit. The Court further dismisses any constitutional takings claims asserted in Count III as unripe, leaving the state-law inverse condemnation claim asserted in that count. The motions are denied in all other respects.

### I. <u>Real Party in Interest</u>

Plaintiffs filed for bankruptcy under Chapter 13 of the Bankruptcy Code on April 13, 2010. *See In re Hermreck*, No. 10-21175 (Bankr. D. Kan.).[1] Defendants argue that, because of that filing, plaintiffs are not the real parties in interest with respect to the claims asserted here. *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). The Court agrees that the bankruptcy trustee, and not plaintiffs, is the real party in interest here.

All legal or equitable interests of a debtor in property at the time of the

---

[1]The Court may consider matter outside the pleadings as necessary in resolving a challenge to jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

2

bankruptcy filing—including causes of action—become property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1); *Smith v. Rockett*, 522 F.3d 1080, 1084 (10th Cir. 2008) ("A debtor's potential causes of action become property of the bankruptcy estate, along with all of her other assets, when a Chapter 13 petition is filed."). Plaintiffs do not dispute that they filed for bankruptcy or that their present claims had already accrued at the time of their bankruptcy filing. (By that time they had already solicited the appraisal report that they subsequently submitted to the City in support of their claims.) Thus, at the time this action was commenced in June 2010, these claims against defendants were property of the bankruptcy estate, and plaintiffs were not the real parties in interest.

Nevertheless, plaintiffs argue that, because their bankruptcy case has now been dismissed (*see* Order of July 23, 2010, *In re Hermreck*), they may assert the claims in this action. Plaintiffs have provided no authority, however, for their position that ownership of the claims has reverted back to them and that they need not have been the real parties in interest at the time of this action's commencement.

The Court rejects this argument by plaintiffs. Upon filing for bankruptcy, plaintiffs were required to list all of the assets of their estate. *See* 11 U.S.C. § 521(1). In this case, plaintiffs did not list these claims as their assets in their bankruptcy case (a fact not disputed by plaintiffs). In such a circumstance, the Tenth Circuit has held that the unlisted claims do not revert back to the debtor, but remain property of the bankruptcy estate, upon closing of the bankruptcy case:

> When the bankruptcy action is closed, "properly scheduled" assets not

3

> otherwise administered revert "to the debtor through abandonment under 11 U.S.C. § 554[(c)]." *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995). Assets not properly scheduled remain property of the bankruptcy estate. *See* § 554(b) ("property of the estate that is not abandoned under this section remain property of the estate"). As a result, the debtor loses all rights to enforce any unscheduled legal claim in his own name. *See Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991) (Chapter 7 debtor who failed to schedule potential claim cannot prosecute claim after emerging from bankruptcy); *cf. Stein v. United Artists Corp.*, 691 F.2d 885, 893 (9th Cir. 1982) (claims not listed in Chapter XI proceedings did not revest in debtor upon bankruptcy discharge).

*Clark v. Trailiner Corp.*, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (unpub. op.) (brackets in original). Although *Clark* is an unpublished opinion, the Court has little doubt that the Tenth Circuit would rule in a similar fashion in this case, in light of the authorities that it cited in *Clark* and other authorities supporting that holding. *See, e.g.*, *In re McLain*, 516 F.3d 301, 315 (5th Cir. 2008); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001); *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995). Accordingly, these claims against defendants remain property of plaintiffs' bankruptcy estate, and therefore the bankruptcy trustee, not plaintiffs, is the real party in interest to this action.

The question then becomes whether the Court should dismiss this action, as urged by defendants. Rule 17(a)(3) provides as follows: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). In discussing this rule, defendants

4

correctly cite *Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004), in which the Tenth Circuit set forth the standard for resolving this issue. In *Esposito*, the court rejected a literal reading of Rule 17(a) that would seem to require that a party always be given a reasonable time to substitute the real party in interest, but instead followed other courts in looking to the advisory committee's notes for the rule. *See id.* at 1275. In light of that guidance, the Tenth Circuit noted that it focuses "primarily on whether the plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was "honest"), and on whether the defendant was prejudiced thereby." *See id.* The court stressed that "even a mistake that should have been patently obvious does not automatically foreclose a later substitution, so long as the plaintiff did not act in bad faith and the defendant has not been prejudiced thereby." *See id.*

In requesting a reasonable time for substitution or joinder of the bankruptcy trustee (if plaintiffs are not the real parties in interest), plaintiffs have not explained their failure to list these claims in their bankruptcy or their failure to join the trustee here. Defendants have not identified any prejudice from substitution at this stage, however, nor have defendants demonstrated bad faith or "deliberate tactical maneuvering" by plaintiffs. Accordingly, the Court will allow plaintiffs a reasonable time in which to substitute or join the bankruptcy trustee.[2]

---

[2]The Court notes that in *Clark*, the Tenth Circuit rejected the plaintiff's attempt to cure this problem (by seeking to reopen the bankruptcy case, listing the claim as an asset, and having the trustee abandon the claim to him), as a plaintiff's standing must be
(continued...)

Plaintiffs have not requested any particular amount of time for this substitution or joinder. Defendants formally raised this objection on July 13, 2010, when they filed their motions to dismiss. Therefore, the Court will impose a deadline of **October 18, 2010**, which the Court deems a reasonable time after the objection for plaintiffs to substitute or join the bankruptcy trustee as the real party in interest to this suit. Defendants' motions to dismiss on this basis are denied at this time, although the action will be dismissed if plaintiffs fail to substitute or join the trustee by that deadline.

## II.    Notice Under the Kansas Tort Claims Act

Although this case is not yet being prosecuted by the real party in interest, the Court will nonetheless address defendants' other challenges to the Court's subject matter jurisdiction. The City argues that it was not given the proper notice under the Kansas Tort Claims Act ("KTCA"), in accordance with K.S.A. § 12-105b, with respect to Counts I, II, and IV of plaintiff's petition. Plaintiffs agree that such notice is required. Plaintiffs note, however, that those counts seek relief only against defendant Horn Development and allege that plaintiffs will seek relief against the City only if that defendant does not adequately respond to their KTCA notice. Thus, because plaintiffs

---

²(...continued)
assessed as of the date the lawsuit is commenced. *See Clark*, 2000 WL 1694299, at *2. Similarly, in this case, plaintiffs would not able simply to obtain ownership of these claims from the bankruptcy court, but instead they must substitute or join the trustee if they wish to continue the present action. If plaintiffs do reacquire these claims, they may only assert them in their own names in a new action.

have confirmed that they have not yet asserted Counts I, II, and IV against the City, there is no basis for the City's motion to dismiss those counts.[3]

### III. <u>Notice Under the Clean Water Act</u>

Defendant Horn Development seeks dismissal of Count IV, which mentions only the CWA as a violated statute or regulation, on the ground that plaintiffs have not satisfied the CWA's notice requirement, 33 U.S.C. § 1365(b)(1)(A). That provision requires a 60-day notice to the EPA, the local State, and the alleged violators before a citizen suit may be brought under the CWA. *See id.*

Plaintiffs concede that notice is required for their CWA claim, and they state that they intend to satisfy that requirement. Plaintiffs also do not dispute that they had not yet satisfied the requirements of the CWA's notice provision at the time they filed suit (they have suggested, without submitting evidence, that they sent out their notice at the time they filed this action). Nevertheless, plaintiffs oppose dismissal of Count IV.

The Tenth Circuit has made clear that compliance with the 60-day notice requirements in the CWA is a mandatory precondition to filing a citizen suit under that

---

[3]The City argues that because these counts contain factual allegations about it, the Court should nonetheless dismiss the counts as applied to the City. The fact that a claim may refer to a party does not mean that the claim has been asserted against the party, however, and there is simply no claim against the City in these counts for the Court to dismiss. The City has not sought to strike any portions of the petition, nor has the City provided any authority for the dismissal of allegations that do not seek relief from the movant.

7

statute. *See New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co.*, 72 F.3d 830, 833 (10th Cir. 1996) (citing, inter alia, *Hallstrom v. Tillamook County*, 493 U.S. 20, 26-33 (1989)). Plaintiffs did not satisfy that precondition before filing this suit. Therefore, the Court dismisses plaintiffs' CWA claim. Plaintiffs have not identified, either in their brief or in Count IV of the petition, any other statutory or regulatory violation that would support a private cause of action against defendants. Therefore, the Court dismisses Count IV in its entirety.

### IV.    <u>Ripeness of Takings Claims</u>

Count III of plaintiffs' petition against the City is titled "Inverse Condemnation", and they assert such a state-law claim in that count. Count III also includes, however, the allegation that the City's actions "are an unlawful taking by a governmental entity without the payment of just compensation in violation of the United States and Kansas Constitutions." The City argues that plaintiffs' constitutional takings claims are not ripe because plaintiffs have not availed themselves of procedures for compensation under Kansas law. The Tenth Circuit has set forth the applicable law as follows:

> The Fifth Amendment does not prohibit the government from taking its citizens' property; it merely prohibits the government from taking property without paying just compensation. Before a federal court can properly determine whether the state has violated the First Amendment, the aggrieved property owner must show first that the state deprived him of his property, and second, that the state refused to compensate him for his loss. In those states that allow aggrieved property owners to bring an inverse condemnation action in order to recover compensation for property taken by the state, a Fifth Amendment takings claim is not ripe until the

8

aggrieved property owner "has used the procedure and been denied just compensation."

*Miller v. Campbell County*, 945 F.2d 348, 352 (10th Cir. 1991) (citing and quoting *Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-97 (1985)). Plaintiffs do not dispute that they brought the present suit without first seeking compensation under Kansas law. Accordingly, any constitutional takings claims asserted by plaintiffs in Count III would not be ripe and would therefore be subject to dismissal.[4]

Plaintiffs respond that, despite the references to constitutional takings claims in their petition, they have merely attempted to assert an inverse condemnation claim under Kansas law, of the type discussed in *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554 (2009)—"no more, no less." *Kirkpatrick* did not involve claims under the federal or state constitution. *See id.* Therefore, plaintiffs have abandoned any constitutional claims, and any such claims asserted in Count III of the petition are hereby dismissed as unripe.

As this Court has previously held in a case involving the City, plaintiffs are not precluded from litigating their state-law inverse condemnation claim (the prerequisite

---

[4]Plaintiffs argue that the ripeness requirement imposed by the Supreme Court in *Williamson* applies only to regulatory takings of the type involved in that case. The Supreme Court did not impose any such limitation on its holding, however, and the courts have applied the ripeness rule generally to constitutional takings claims. Plaintiffs have provided no authority to support its argument that no ripeness requirement should be imposed here.

to any takings claim) in federal court. *See Oddo Dev. Co. v. City of Leawood, Kan.*, 2009 WL 975139, at *2-3 (D. Kan. Apr. 9, 2009) (Lungstrum, J.). The City's motion to dismiss is therefore denied as it relates to the inverse condemnation claim asserted in Count III of the petition.

### V.     Supplemental Jurisdiction

In light of the rulings above, pending substitution or joinder of the bankruptcy trustee, only state-law claims asserted in Counts I, II, and III remain in this case. Accordingly, because diversity is lacking, this case may not remain here unless the Court exercises supplemental jurisdiction over those claims. In the usual case, the Court would decline to exercise such jurisdiction at this stage of the litigation. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state-law claims if it has dismissed all claims over which it has original jurisdiction). In this case, however, plaintiffs have indicated that they will seek to amend to re-assert their CWA claim after they have satisfied the notice requirement—which, if the case has been remanded to state court, would allow for removal once again. For that reason, the Court will exercise supplemental jurisdiction for the present time, at least until such time, if ever, that it has become clear that plaintiffs will not pursue a federal claim in this action.

### VI.    "Common Enemy" Doctrine

Finally, defendant Horn Development moves to dismiss Counts I and II against

10

it, pursuant to Fed. R. Civ. P. 12(b)(6), on the basis of the "common enemy" doctrine under Kansas law, which generally allows development to affect drainage of surface water. As plaintiffs note, however, the doctrine does not provide an absolute immunity to liability in all cases involving water drainage. *See, e.g.*, *Williamson v. City of Hays*, 275 Kan. 300, 310 (2003) (doctrine does not give a landowner license to harm neighboring properties; a municipality is not permitted to disturb the natural drainage of water, nor is a landowner permitted to shed water on a neighbor's property that would not otherwise have gone there). Plaintiffs' factual allegations would support liability despite application of the "common enemy" doctrine—a point tacitly conceded by Horn Development by its failure to assert any argument on this issue in its reply brief. The Court therefore denies Horn Development's motion to dismiss Counts I and II on this basis.[5]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motions to dismiss plaintiffs' petition (Doc. ## 3, 5) are **granted in part and denied in part**. The Court rules that plaintiffs are not the real parties in interest for these claims, and plaintiffs are granted leave until **October 18, 2010**, to substitute or join the bankruptcy trustee as plaintiff. Count IV is dismissed for failure to satisfy the notice requirement

---

[5] The Court could defer ruling on any issue on the merits under Rule 12(b)(6) until the case includes the real party in interest. Because Horn Development's argument lacks merit, however, the Court deems it appropriate to deny to motion as it relates to that argument at this time.

11

of the Clean Water Act. Any constitutional takings claims asserted in Count III are dismissed as unripe. The motions are denied in all other respects.

IT IS SO ORDERED.

Dated this 21st day of September, 2010, in Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge